**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**
**PADUCAH DIVISION**
**CASE NO. 5:08-CV-00005**

**TETRA TECHNOLOGIES, INC.**                                                      **PLAINTIFF**

**v.**

**CELTIC & STONE LIQUID CONSULTING, LLC,**
**EXCELL MARINE CORPORATION, and**
**CGB WATERFRONT SERVICES, INC.**                                    **DEFENDANTS**

**MEMORANDUM OPINION AND ORDER**

This matter comes before the Court on Defendant Celtic & Stone Liquid Consulting, LLC's Motion to Dismiss (DN 37).  Plaintiff has responded (DN 51).  Defendants Excell Marine Corporation and CGB Waterfront Services, Inc. also oppose Celtic & Stone's Motion (DN 52 & 53).  Celtic & Stone has replied (DN 66).  This matter is now ripe for adjudication.  For the reasons that follow, Celtic & Stone's Motion is DENIED.

**BACKGROUND**

This matter arises out of the sinking of Plaintiff TETRA Technologies, Inc.'s ("TETRA") tank barge TTI-35 along the east bank of the Mississippi River near Wickliffe, Kentucky on September 13, 2005.  TETRA filed this maritime action against Defendants, seeking damages arising from the loss of the tank barge and its cargo.

Celtic & Stone Liquid Consulting, LLC ("Celtic & Stone") is in the business of arranging barge transportation.  During 2004 to 2008, TETRA contracted with Celtic & Stone to arrange towage and fleeting services necessary to transport TETRA's seventeen tank barges from Louisiana to West Virginia, Illinois, or Missouri.  Celtic & Stone charged TETRA a flat rate for each of these barge movements.  This rate included the cost of any necessary shifting of the barge at either origin or destination, towage to destination and return towage back to point of

origin, and any necessary fleeting of the tank barges during the course of the trip.

In August 2005, TETRA hired Celtic & Stone to arrange the transportation of the TTI-35 from Port Allen, Louisiana to Charleston, West Virginia. Celtic & Stone booked transportation of the barge through Excell Marine Corporation ("Excell"). Excell is the owner and operator of various towboats, and provides line haul towing services on the Mississippi and Ohio Rivers and their adjoining waters. Excell provided the Towboat M/V NOLAN R. BORDEN to tow the TTI-35 from Baton Rouge to CGB Waterfront Services, Inc.'s ("CGB") facility near Wickliffe, Kentucky. On August 31, 2005, the M/V NOLAN R. BORDEN departed Port Allen, Louisiana bound for Wickliffe, Kentucky with the TTI-35 and its cargo of calcium chloride in tow. On September 9, 2005, the M/V NOLAN R. BORDEN dropped off the TTI-35 at the CGB fleeting facility, where the barge remained in the care, custody, and control of CGB for the next four days. On September 13, 2005, CGB fleet personnel had finished making the TTI-35 into the tow of Excell's M/V R.L. GRIFFITH, which was getting underway to depart to Point Pleasant, West Virginia, when the TTI-35 took on water and sank.

Celtic & Stone has moved to dismiss this matter on the grounds of lack of personal jurisdiction and improper venue because it does not have the requisite minimum contacts with the Commonwealth of Kentucky to sustain personal jurisdiction, and where personal jurisdiction is lacking venue is improper.

## STANDARD

TETRA contends that this Court may properly exercise specific jurisdiction over Celtic & Stone. TETRA bears the burden of establishing the existence of personal jurisdiction. *Air Prods. & Controls, Inc. v. Safetech Int'l*, 503 F.3d 544, 549 (6th Cir. 2007). A federal district

2

court may exercise personal jurisdiction over a nonresident defendant when the forum state's

long-arm statute confers personal jurisdiction over the defendant and the exercise of that

jurisdiction comports with constitutional due process. *Id.* at 550.

Because Kentucky's long-arm statute reaches as far as the limits of the federal Due

Process Clause, the Court need only analyze whether the assertion of personal jurisdiction

violates constitutional due process. *Aristech Chem. Int'l Ltd. v. Acryllic Fabricators Ltd.*, 138

F.3d 624, 627 (6th Cir. 1998).[1]  For the purpose of specific jurisdiction, the only type of personal

jurisdiction asserted by TETRA, the Sixth Circuit applies a three part test for determining

whether the requirements of due process are met, as articulated in *Southern Machine Company v.*

*Mohasco Industries*:

> First, the defendant must purposefully avail himself of the privilege of acting
> in the forum state or causing a consequence in the forum state. Second, the
> cause of action must arise from the defendant's activities there. Finally, the
> acts of the defendant or consequences caused by the defendant must have a

---

[1] Kentucky's long-arm statute provides in pertinent part as follows:
A court may exercise personal jurisdiction over a person who acts directly or
by an agent, as to a claim arising from the person's:

    1.     Transacting any business in this Commonwealth;

    2.     Contracting to supply services or goods in this Commonwealth;

    3.     Causing tortious injury by an act or omission in this Commonwealth;

    4.     Causing tortious injury in this Commonwealth by an act or omission outside this Commonwealth if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this Commonwealth, provided that the tortious injury occurring in this Commonwealth arises out of the doing or soliciting of business or a persistent course of conduct or derivation of substantial revenue within the Commonwealth . . . .

KRS § 454.210(2)(a).

substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

401 F.2d 374, 381 (6th Cir. 1968).

## ANALYSIS

The first prong of the *Southern Machine* test, that a defendant "purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state," *S. Mach. Co.*, 401 F.2d at 381, "ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts," *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985). Celtic & Stone argues that this prong is not satisfied because it merely booked transportation of the barge from Louisiana to West Virginia, it did not select the route, and the fact that the barge sank while in Kentucky was purely fortuitous. TETRA argues that Celtic & Stone purposefully availed itself of the privilege of conducting activities in Kentucky by arranging for the transportation of TTI-35 through Kentucky waters.

The parties also disagree as to whether Celtic & Stone or Excell selected the CGB fleeting facility. In its Answer, Celtic & Stone admitted that "it arranged for CGB to provide fleeting services to Plaintiff." Subsequently, Robert Bayham Jr., the Chief Financial Officer of Celtic & Stone, testified that Excell selected the CGB facility and that Celtic & Stone had no contract with CGB regarding the TTI-35. In reply, Celtic & Stone explains that by stating that it "arranged for" fleeting services in its Answer it did not mean that it made any arrangements with CGB, selected CGB, hired CGB, or had any other contact with CGB. TETRA has submitted no other evidence that Celtic & Stone selected or hired CGB to fleet the TTI-35 at CGB's facility.

Regardless of who selected or hired CGB, barge fleeting at the junction of the Mississippi and Ohio Rivers was part of the barge transportation service that TETRA contracted

4

with Celtic & Stone to provide, and was part of the flat rate Celtic & Stone charged TETRA to transport the TTI-35.  Bayham also testified that CGB invoiced Celtic & Stone for fleeting the TTI-35.  And perhaps most importantly, Celtic & Stone knew that a barge being transported from Louisiana to West Virginia must go up the Mississippi River, up the Ohio River, and past Kentucky.  Celtic & Stone also knew that it is very common for barges making that trip to be fleeted at a location at or near the mouth of the Ohio River.

Celtic & Stone makes much of the fact that it only arranged transportation of the barge on TETRA's behalf and did not actually determine the route the barge would travel.  The Court finds this argument unpersuasive.  When Celtic & Stone contracted with TETRA to arrange transportation of the TTI-35 from Louisiana to West Virginia and booked transportation of the barge through Excell knowing that the barge would have to travel through Kentucky waters, it purposefully availed itself of the privilege of acting in Kentucky.  That the barge sank in Kentucky was not purely fortuitous.  It was not random.  Celtic & Stone purposefully directed its business activities through Kentucky.  It knew that Excell would be towing the TTI-35 past Kentucky, and that it would most likely be fleeted at or near the mouth of the Ohio River.  The Court finds that by knowingly arranging for the transportation of a barge through Kentucky, Celtic & Stone satisfies the first requirement of specific jurisdiction.

The second prong is that the "cause of action must arise from the defendant's activities" in the forum state.  *S. Mach. Co.*, 401 F.2d at 381.  This requirement is satisfied here because the sinking of the barge arose out of Celtic & Stone's arranging for it to be transported through Kentucky.

Finally, "[i]f prongs one and two of *Southern Machine* test are satisfied, then there is an

inference that the reasonableness prong is satisfied as well." *Intera Corp. v. Henderson*, 428 F.3d 605, 618 (6th Cir. 2005).  The third *Southern Machine* prong requires that "the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable." *S. Mach. Co.*, 401 F.2d at 381.  "Generally, when considering whether it is reasonable to exercise personal jurisdiction over a non-resident defendant, a court must consider several factors including the following: (1) the burden on the defendant; (2) the interest of the forum state; (3) the plaintiff's interest in obtaining relief; and (4) other states' interest in securing the most efficient resolution of the controversy." *Intera Corp.*, 428 F.3d at 618.

First, Celtic & Stone would be burdened if they were compelled to litigate this case in Paducah, Kentucky because it would have to travel from Louisiana.  This alone, however, does not defeat specific jurisdiction. *See id.*  Second, Kentucky has a strong interest in exercising jurisdiction over Celtic & Stone, even though TETRA is not a Kentucky corporation, because the incident occurred in Kentucky waters.  Third, TETRA has a substantial interest in obtaining relief.  Fourth, Delaware, Texas, Ohio, Illinois or Louisiana may also have an interest in resolving the controversy because TETRA is a Delaware corporation with its principal place of business in Texas, Excell is an Ohio corporation with its principal place of business in Ohio, CGB is an Illinois limited liability company with its principal place of business in Illinois, and Celtic & Stone is a Louisiana limited liability company with its principal place of business in Louisiana.  Celtic & Stone does not suggest which jurisdiction would be most efficient.  Both Excell and CGB oppose Celtic & Stone's present motion to dismiss for lack of personal jurisdiction.

The Court finds that Celtic & Stone's actions do have a substantial enough connection with Kentucky for it to be reasonable for a Kentucky court exercise personal jurisdiction over it. The inference that the third prong is satisfied because the first two prongs are satisfied, combined with (1) Kentucky's interest in exercising jurisdiction, (2) the fact that the incident occurred in Kentucky waters, (3) opposition to a change in venue by the other nonresident defendants, and (4) the absence of a more efficient forum, all weigh in favor of this Court exercising personal jurisdiction over Celtic & Stone.

In sum, the Court finds that all three prongs of the *Southern Machine* test are satisfied and therefore this Court may exercise specific jurisdiction over Celtic & Stone.  Because the Court finds that personal jurisdiction is proper, Celtic & Stone's venue argument is moot.

## CONCLUSION

For the foregoing reasons, IT IS HEREBY ORDERED that Celtic & Stone's Motion to Dismiss is DENIED.